J-S82037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.K.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.L.P., FATHER | No. 1308 MDA 2016 |

Appeal from the Decree June 23, 2016
in the Court of Common Pleas of Berks County
Orphans' Court at No.: 84598

BEFORE: OTT, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED DECEMBER 19, 2016**

A.L.P. (Father) appeals the decree of the Court of Common Pleas of Berks County, entered June 23, 2016, that terminated his parental rights to his daughter, A.K.P., born in August of 2012, (Child), and changed Child's goal to adoption. We affirm.[1]

Berks County Children and Youth Services (CYS) filed a petition to terminate Father's parental rights to Child on December 15, 2015. The trial court aptly summarized the events that led CYS to file those petitions in its

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] A.M.P. (Mother) voluntarily relinquished her parental rights by executing a consent to the adoption of Child on May 16, 2016. The trial court entered a decree of voluntary termination of her parental rights on June 23, 2016.

opinion entered August 12, 2016. We direct the reader to that opinion for the facts of this case.

The trial court held a hearing on CYS' petitions on June 20, 2016. Testifying at that hearing were Father, from prison by videoconference, and CYS caseworker, Brynn Fizz. The trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b) on June 23, 2016. Father filed his timely notice of appeal and statement of errors complained of on appeal on July 12, 2016. **_See_** Pa.R.A.P. 1925(a)(2)(i).[2]

Father's attorney has filed an application to withdraw as counsel and an **_Anders_** brief in which he raises the following question: "Did the [trial c]ourt err by terminating [Father's] parental rights because the evidence presented by [CYS] was insufficient to support the [trial] court's decision?" (**_Anders_** Brief, at 5).

> Our standard of review is as follows:
>
> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

---

[2] The court entered a Rule 1925(a) opinion on August 12, 2016. **_See_** Pa.R.A.P. 1925(a)(2)(ii).

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Requests to have a natural parent's rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform

parental duties. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court

is not required by statute or precedent to order a formal bonding evaluation performed by an expert. **See In re K.K.R.-S.**, 958 A.2d 529, 533 (Pa. Super. 2008).

As an initial matter, we must dispose of the application to withdraw as counsel filed by Father's attorney. Father's counsel, Gregory S. Ghen, Esquire, has filed an application with this Court to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

**In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. **See In re V.E.**, *supra* at 1275. "When considering an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." **In re S.M.B.**, *supra* at 1237.

In ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the contents of an ***Anders*** brief, and required that it:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, ***supra*** at 361. "After an appellate court receives an ***Anders*** brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, ***supra*** at 1237.

With respect to the third requirement of ***Anders***, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Father's attorney, in his application to withdraw as counsel, has stated that he has made a conscientious review of the record and concluded that

his client's appeal is wholly frivolous. (**See** Application for Leave to Withdraw as Counsel, 9/07/16, at unnumbered page 1). In addition, he timely mailed his client: (1) a copy of his petition to withdraw; (2) a copy of his **Anders** brief; and (3) a letter advising his client of his rights to proceed *pro se* or to retain private counsel if the petition is granted and to raise any additional issues that he deems worthy of consideration. (**See id.** at unnumbered page 2, Exhibit A). Counsel has filed the required **Anders** brief in this Court setting forth the background of this case, the issue he believes might arguably support Appellant's appeal, his conclusion that the appeal is frivolous, and the reasons for his conclusion. (**See Anders** Brief, at 5-9). Thus, counsel for Father has satisfied the procedural requirements of **Anders** and we grant him leave to withdraw as counsel.

We have examined the opinion entered by the trial court on August 12, 2016 in light of the record in this matter and are satisfied that that opinion is a complete and correct analysis of this case.

Accordingly, we affirm the decree of the Court of Common Pleas of Berks County that terminated Father's parental rights and changed Child's goal to adoption, on the basis of the trial court's opinion.

Decree affirmed. Application to withdraw as counsel granted.

J-S82037-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/2016

- 9 -

IN RE:                                    : IN THE COURT OF COMMON PLEAS
                                          : OF BERKS COUNTY, PENNSYLVANIA
           A.K.P.                         : ORPHANS' COURT DIVISION
                                          :
                                          : No. 84598

Jennifer L. Grimes, Attorney for BCCYS, Petitioner/Appellee
Cathy Badal, Guardian *Ad Litem* for A.K.P.
Gregory S. Ghen, Attorney for A.L.P., Father
Peter David Maynard, Attorney for A.M.P., Mother

OPINION, Scott D. Keller, S.J.        _Sϑ/K_              Dated: August 12, 2016

This matter came before the Court on the petitions of Berks County Children and Youth

Services ("BCCYS") to terminate the parental rights of A.M.P. ("Mother") and A.L.P. ("Father")

to the child, A.K.P., date of birth August ⬤ 2012 ("Child").[1]  Mother signed a consent to

adoption, which was confirmed by the Court on June 23, 2016.  The petition to involuntarily

terminate Father's rights was filed on December 15, 2015 on the grounds set forth in 23

Pa.C.S.A. §2511(a)(1), (2), (5), and (8).  After a series of continuances, a hearing was held on

June 20, 2016.  Mother was present with counsel before being excused by the Court.  Father was

present via video from SCI Graterford.  Father's court-appointed counsel was present for the

hearing. Upon conclusion of the hearing, the Court took the matter under advisement.  On June

23, 2016, the Court granted the petition to terminate Father's parental rights to the Child.  Father

filed a Notice of Appeal and a Concise Statement of Matters Complained of on Appeal.

The statute at paragraph 2511(a)(1) provides that parental rights in regard to a child may

be terminated on the grounds that a "parent by conduct continuing for a period of at least six

months immediately preceding the filing of the petition either has evidenced a settled purpose of

---

[1] Mother has two other children by different men.  Given that only A.L.P. has filed an appeal, this Opinion addresses
only the matter of Child, A.K.P.

1

relinquishing parental claim to a child or has refused or failed to perform parental duties." Paragraph (a)(2) provides that parental rights may be terminated on the grounds that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." Paragraph (a)(5) provides for termination of parental rights when a "child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child." Paragraph (a)(8) provides that parental rights may be terminated on the grounds that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child." "With respect to any petition filed pursuant to (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

"Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities." *In re: D.J.S.*, 737 A.2d 283, 287 (Pa. Super. 1999). The long-standing law of the Commonwealth

2

is that the inability of a parent to perform parental duties makes him or her just as parentally unfit as a parent who refuses to perform these duties. *In re: B.L.W.*, 843 A.2d 380, 388 (Pa. Super. 2004). Regardless of inability or refusal, once a parent demonstrates a failure to fulfill his or her parental duties, the child's right to fulfillment of his or her potential in a permanent, healthy, safe environment with proper parenting supersedes the parent's basic constitutional right to custody and rearing of the child. *Id.* In terminating the rights of a parent, the court must give "primary consideration to the developmental, physical, and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b).

Incarceration is not in and of itself determinative of parental incapacity, but it "can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence.'" *In Re: Adoption of S.P.*, 47 A.3d. 817, 831 (Pa. 2012); *In re R.I.S. & A.I.S.*, 36 A.3d 567, 576 (Pa. 2011), Justice Baer concurring. "The length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)." *In Re: Adoption of S.P.*, 47 A.3d. at 831. If a parent will remain incarcerated for too long of a period of time to permit unification with a child "in a timely basis in order to provide the child with the permanent home to which he or she is entitled, then the length of sentence, standing alone, should and does meet the legal criteria for involuntary termination of the incarcerated parent's parental rights." *In re R.I.S. & A.I.S.*, at 576. "[T]he child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what [he] is supposed to do in prison." *In re E.A.P.*, 944 A.2d 79, 84 (Pa.Super.2008). "It is incumbent upon the judicial system to be child-focused." *In re R.I.S.*, 36 A.2d at 579.

3

This family came to the attention of BCCYS has the result of a March 2014 report that alleged lack of appropriate housing, lack of stable income, lack of parenting skills, and substance abuse by the parents – specifically Mother, her paramour, and the father of Mother's oldest child – in Mother's apartment while the children were present.[2] BCCYS's investigation revealed that Mother had three children, all by different men; Mother, her paramour and others regularly smoked K-2 in the apartment; the sink was broken; there was a potential bedbug problem; and Father was incarcerated. The case was opened for in-home services. On September 3, 2014, the children were placed in foster care.

Because Mother signed a consent to adoption, this Opinion will focus on Father's parenting or, rather, lack thereof and will not delve into the details of Mother's parental conduct and corresponding relationship with BCCYS.

Father has a criminal history dating back to 2006, when he was incarcerated for approximately a year and a half on a firearms charge. After jail, he was in a halfway house. He was home in 2009 until a new arrest in April 2009. He was confined until 2011. Based on his own testimony, Father was an absconder for about one year until he was caught in Florida in 2012. December 19, 2012 charges for fleeing or attempting to elude a police officer, resisting arrest and litany of driving offenses landed him back in jail. Child was four months old at the time.

In response to a BCCYS letter to Father on March 25, 2014, Father reported that he was incarcerated at SCI Coal Township, that he was not parole eligible until December 2015, but that he wanted to help any way that he could. He completed a jail program called "Thinking for a Change" in April 2014. He was present at a dispositional hearing on September 17, 2014 vial telephone and was ordered to comply with a multitude of services.

---

[2] Mother was known to BCCYS as a foster child during the years of 1995 to 2004.

4

Father participated in the first permanency review hearing on February 17, 2015 via telephone. The Court found that there was no compliance with the permanency plan and no progress toward alleviating the circumstances of placement. Father was ordered to contact BCCYS to schedule casework if he wished to be eligible for visitation with Child.

Father was present for the second and third permanency review hearings on August 11, 2015 and January 19, 2016 via telephone. The Court found Father to have been minimally compliant with the permanency plan and that he made no progress toward alleviating the circumstances of placement. He completed a parenting course in December 2015. There were no visits with Child.

On multiple occasions during his incarceration, Father wrote and telephoned BCCYS. He stated he was willing to do whatever he needed and to work toward reunifying with Child. Father set forth no plan to implement this willingness. BCCYS encouraged Father to write to Child, to send her pictures, and to send her cards. Father never sent correspondence to BCCYS for Child.

In January 2016, Father reported a hope that he would be released from jail in a few months. He planned to go to a halfway house. BCCYS directed him to report to the agency upon his release to arrange services. Father was released on March 22, 2016, but he did not contact BCCYS. On April 7, 2016, BCCYS learned that Father was not reporting to his parole officer, that he was considered an absconder, and that a warrant had been issued for his arrest. As of the June 20, 2016 hearing, Father was back in a state correctional institution without having made any attempt to see Child. He believes he is parole eligible in October 2016.

Father has not seen Child since she was four months old – she is now four years old. In over three and one-half years, Father never saw her, wrote her, called her, or provided her with

5

financial support or any other kind of parental control and subsistence. Given his history of being in jail or a halfway house more often than not during his adult life, given his failure to reach out to his daughter, especially upon his release from jail in March 2016, and given that he will be incarcerated for at least several more months, the Court has no expectation that Father can or will remedy his failures as a parent in a reasonable period of time. The needs and welfare of Child are paramount, and Father has not provided for them for most of Child's life.

Child is doing very well in her foster home where she has been placed with her maternal siblings.[3] She is bonded with her foster parents to whom she looks for love, safety, and support. Child has no bond with Father. Freeing Child for adoption will provide her with the opportunity for permanency and stability and will be in her best interests.

For the foregoing reasons, the Court entered its Decree terminating Father's parental rights to Child.

BY THE COURT:

_____
Scott D. Keller, S.J.

Distribution: Clerk of the Orphans' Court; BCCYS Solicitor; Guardian Ad Litem; Attorney for Mother; Attorney for Father

Certified to be a true and correct copy of the original on file.

8-12-16          _____
Date               Clerk of Orphans' Court

---

[3] Child has three paternal siblings.

6